NATIONAL LABOR RELATIONS BOARD v. DOW CHEMICAL CO. (MIDLAND CHEMICAL WORKERS' ASS'N, Intervenor).

No. 8618.

Circuit Court of Appeals, Sixth Circuit.

Feb. 6, 1941.

Philip G. Phillips, of Cincinnati, Ohio, (Robert B. Watts, Laurence A. Knapp, Richard C. Barrett, Samuel Edes, and Leonard Appel, all of Washington, D. C., and Philip G. Phillips, of Cincinnati, Ohio, on the brief), for petitioner.

Calvin A. Campbell, of Midland, Mich. (Calvin A. Campbell, C. Emerson Price, and Wm. A. Groening, Jr., all of Midland, Mich., on the brief), for respondent.

Walter B. Brown, of Midland, Mich., for intervenor.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Based on exhaustive findings of fact and succinct conclusions of law (13 N.L.R.B.

[1] Judge Arant concurred in the conference conclusion in this case but died before the opinion was prepared.

.993), the National Labor Relations Board, pursuant to Title 29, Section 160(c) U.S.C.A., 49 Stat. 453, issued on July 25, 1939, against respondent, the Dow Chemical Company, an order which this court is petitioned to enforce.

The Board has directed respondent to (1) cease and desist from contributing support to, interfering with, or dominating the Midland Chemical Workers' Association, or recognizing it as the representative or bargaining agent of employees of respondent, or from effectuating any agreement made by the company with the labor association concerning wages, pay, work hours, or other conditions of work; and from discouraging membership in United Mine Workers of America, District No. ·50, or any other organization of its employees, or encouraging membership in any labor organization by discharging, laying off, or refusing to reinstate any of its employees, or in any other manner discriminating in regard to any condition of work; and from "in any other manner interfering with, restraining or coercing its employees in the exercise of their rights to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own ·choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157."

(2) The respondent was ordered to take the affirmative action of withdrawing recognition of the Midland Chemical Workers' Association as representative of any employees of the company in dealings with the company concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and to disestablish completely the Midland Chemical Workers' Association as such representative.

(3) Respondent was further ordered to reinstate immediately, in the manner required, twenty-five named employees to their former, or substantially equivalent positions, without prejudice to their seniority and other rights and privileges; to make whole sixteen of these employees and four others named, for any loss of pay resultant from respondent's discrimination against them, by paying each of them what he would have earned as wages from the date of discrimination to the date of offer of reinstatement, less net earnings as provided;

to make whole nine of the reinstated employees for any loss of pay in consequence of discrimination, by paying each of them his lost wages "from the date of the discrimination to the date of the intermediate report of the Trial Examiner, and from the date of this order to the date of the offer of reinstatement, less his net earnings," with deductions to be made in the manner described in the order.

(4) It was directed that one individual employee, Guy Lewis, should be placed upon a preferential list for reinstatement when his former, or a substantially equivalent position should become available; and that he be paid wage losses as prescribed in the order.

(5) Further direction was given that notices, as prescribed, should be posted and maintained in conspicuous places in each department of the respondent's plant, and that the Regional Director should be notified as to what steps respondent has taken to comply with the order.

(6) The complaint of six employees was dismissed, and the complaint of ten other employees was dismissed without prejudice.

Procedure in conformity with the statute, Title 29, Section 160(e), U.S.C.A., has brought the validity of this order within the circumscribed power of review of the United States Circuit Court of Appeals. As usual in cases of this category, the sole issue for determination here is whether the record reveals substantial evidence to support the findings of fact upon which the National Labor Relations Board based its order, commanding respondent to cease and desist and to obey by affirmative action, as therein directed.

It is recognized that "the findings of the Board as to the facts, if supported by evidence, shall be conclusive." 49 Stat. 449, Section 10(e).

The respondent, a Michigan manufacturer of industrial and pharmaceutical chemicals distributed throughout the nation, contends, however, that its discharge of the supposed ring leaders of a suspected strike movement and its participation with many of its employees in an effort to thwart the possibility of a strike were not a violation of the National Labor Relations Act, Sections 8(1) and 8(2), 29 U.S.C.A. § 158(1, 2).

In support of its insistence, respondent quotes the language of this court in National Labor Relations Board v. Ford Motor Company, 6 Cir., 114 F.2d 905, 911: "In this situation it may be assumed that the

respondent was justified in the precautions it took to protect its plant from seizure, either by employees from within, or by others from without. It had reason to fear that there would be an attempt to seize the gates of the River Rouge plant and to invade it for the purpose of staging a sit-down strike."

But the situation presented here is utterly different from that encountered in the Ford case. The fear of the respondent, Dow Chemical Company, of a sit down strike rested wholly on mere suspicion and rumor. There is shown in the record no evidence of threats or overt acts on the part of any of its employees. · The supervisor who was in charge of production in respondent's foundry, fabrication plant, and alloy and die casting departments admitted that his expectation of a meeting of employees for "sit down strike" discussion had been based on "nothing but hearsay" and rumor. Moreover, the company's "chief operator engineer" admitted that he had possessed no fear of a plant seizure.

The Board was clearly right in finding that "the record is devoid of evidence to show that the rumor (of a sit down strike) had any factual basis or that it emanated from union sources."

Respondent charges that no substantial evidence can be found in the record to support the findings of the Board that respondent (1) dominated or interfered with the formation or administration of the Midland Chemical Workers' Association in violation of Section 8(2) of the National Labor Relations Act; or (2) discharged eight employees between March and November, 1937; and (3) discriminated against nineteen employees during the general crew reductions, between November, 1937, and February, 1938, in violation of Section 8(3) of the Act.

The record does not justify the position taken by respondent. The Board has surveyed the evidence comprehensively, and in 137 pages of discussion has pointed pertinently and in detail to facts and deductions therefrom upon which its order was predicated. It is true that, while the bulk of its findings is supported by direct evidence, some findings of the Board rest on circumstantial evidence and reasonable inferences therefrom.

While we have not, the National Labor Relations Board has been entrusted with the power to draw inferences from facts. National Labor Relations Board v.

Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 461, 60 S.Ct. 307, 84 L.Ed. 396.

This principle was emphasized in a recent opinion of the Supreme Court in words which apply as well to the almost parallel context found here: "The Board, like other expert agencies dealing with specialized fields (See Rochester Tel. Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 764, 83 L.Ed. 1147; Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659) has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony. The Board had the right to believe that the maintenance of the company union down to the date when Independent's membership drive was completed was not a mere coincidence. * * * The declared hostility towards an 'outside' union, the long practice of industrial espionage, the quick recognition of Independent, the support given Independent's membership drive by some of the supervisory staff, the prominence of company union representatives in that drive, the failure of the employer to wipe the slate clean and announce that the employees had a free choice, the belated instructions to the supervisory staff not to interfere—all corroborate the conclusion that the employer facilitated and aided the substitution of the union, which it preferred, for its old company union. * * * The employer's attitude towards an 'outside' union coupled with the discharge of Salmons and Novak for activities on behalf of Amalgamated would tend to have as potent an effect as direct statements to the employees that they could not afford to risk selection of Amalgamated. * * * Intimations of an employer's preference, though subtle, may be as potent as outright threats of discharge." National Labor Relations Board v. Link-Belt Company, 61 S.Ct. 358, 365, 85 L.Ed. —, decided January 6, 1941.

In the instant case, the Board concluded that the respondent had violated the rights of its employees, guaranteed by Section 7 of the National Labor Relations Act, in that the Midland Chemical Workers' Association had been organized, with full approval and assistance of respondent, on company time and on company property; that respondent had aided Midland and thwarted the C. I. O. Union by solicitation of membership for Midland and by espion-

age, threats, coercive statements, interference with a meeting, and by discriminatory discharges and strategically timed concessions. It was further found that when Midland "emerged as the embodiment of the respondent's conception, a device with which to counteract the Union," a contract was executed "to sanctify the Association and to continue the pursuit of its unlawful purpose."

After elaborate discussion of the sequences of this agreement, with a heavy ictus laid upon the clause providing that in "any change of personnel, seniority rights will prevail wherever possible to the best interest of the Company and the members of the Association," the Board declared that "the agreement was a convenient cover under which the respondent continued the anti-Union policy which it had instituted upon the formation of that organization." Even the assistant general manager of the Dow Company admitted that the agreement protected no other employees than those who were members of the Midland Association.

The proof adduced in this case negatives the argument that the inferences drawn by the Board are so far fetched that they pass beyond the limits of power delegated to the Board by Act of Congress. Title 29, Section 160, U.S.C.A. Indeed, the inferences are of the character sustained by highest authority. As was said in the Link-Belt case, supra: "Here no one fact is conclusive. But the whole congeries of facts before the Board supports its findings."

■ On behalf of the intervenor, the Midland Chemical Workers' Association, it is urged that the Board exceeded its authority in ordering the disestablishment of that company union. A similar argument was rejected in the Link-Belt case, supra: "The Board not the courts determines under this statutory scheme how the effect of unfair labor practices may be expunged. (Citing authorities infra.) The order of disestablishment must be enforced." National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; International Association of Machinists v. National Labor Relations Board, 61· S.Ct. 83, 85 L.Ed. ——, decided Nov. 12, 1940. See, also, National Labor Relations Board v. Falk Corpora-

tion, 308 U.S. 453, 461, 60 S.Ct. 307, 84 L.Ed. 396.

The Board's discussion of the evidence relating to the discharge of the workers involved in this case consumes more than one hundred printed pages. The case history of each employee concerned is related in detail. It could serve no useful purpose should this court further burden the already overloaded case reports by needless repetition, even in condensed form, of dry-as-dust fact narrative.

■ Let it be enough to say that we find in the record sufficient evidence, direct or circumstantial, or both, to support the action of the Board in the instance of each employee whose rights have been adjudicated. Likewise, as heretofore indicated, there is substantial evidence to support the findings of fact, upon which each of the other mandates contained in the order of the Board was based.

■ It has been conceded by counsel for the Board that the "work relief provisions" of paragraph 2(c), 2(d), and 2(f) of the order exceeded the powers of the Board. Republic Steel Corporation v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. ——.

Accordingly, the suggested modification of each of these paragraphs is adopted by striking out the following language: "but the respondent shall pay any such amount deducted to the appropriate fiscal agency of Federal, State, county, municipal, or other government financing such relief project."

■ To conform to present practice, Phelps Dodge Corporation v. National Labor Relations Board, 2 Cir., 113 F.2d 202, 204, there will be a modification of the notice provisions of paragraph 2(g) of the order, so that the subsection will read: "(g) Post immediately and in conspicuous places in each department of the respondent's plant notices, stating: (1) that the respondent will not engage in the practice from which it is ordered to cease and desist in paragraph 1(a), (b), (c), (d), and (e) of this order; (2) that employees are free to remain or become members of United Mine Workers of America, District No. 50, and that the respondent will not discriminate against any employee because of such membership; and (3) that the respondent withdraws all recognition from the Midland Chemical Workers' Association, as representative of any of its employees, completely disestablishes it as such representa-

tive, and gives no further effect to any agreement with said Association in respect to rates of pay, wages, hours of employment, or other conditions of work."

With the order to be modified as directed, the petition of the National Labor Relations Board for enforcement, as prayed herein, is allowed.