## NATIONAL LABOR RELATIONS BOARD v. ALLOY CAST STEEL CO.
### No. 8693.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1941.

Philip G. Phillips, of Cincinnati, Ohio (Robert B. Watts, Laurence A. Knapp, Bertram Edises, and Marcel Mallet-Prevost, all of Washington, D. C., on the brief), for petitioner.

Ben T. Wiant, of Marion, Ohio, for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

To the enforcement petition of the National Labor Relations Board, the respondent in brief and argument makes the single reply that the Board had no jurisdiction over it or the subject matter of the complaint. The response appears to be founded upon a misconception of the purpose and scope of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and upon lack of understanding of the many decisions interpreting its provisions, sustaining the orders issued under its authority, and adjudicating its constitutional validity.

The respondent is an Ohio corporation which operates an electric steel foundry in Marion, Ohio, where it receives a substantial part of its raw materials from without the state, and from which it ships products to other states. The greater part of its production, however, is sold to the Osgood Company and the General Excavator Company at Marion, where the rough castings are machined and built into assemblies shipped largely into other states. The three companies have the same president, secretary and treasurer, and five common directors. The same five stockholders own 40% of the respondent's stock, 41% of the stock of the Osgood Company and 98.5% of the stock of the General Excavator Company. The plant of the respondent and

that of the General Excavator Company are on adjoining properties and are served by a common compressed air system. It is clear from this abbreviated recital, that any labor practice condemned by the Act as unfair, and which would lead or tend to lead to industrial strife, would directly and immediately affect interstate commerce. Santa Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 463, 58 S.Ct. 656, 82 L.Ed. 954.

█ In Consumers Power Co. v. N. L. R. B., 6 Cir., 113 F.2d 38, 41, we considered and rejected the argument that no immediate and direct effect upon interstate commerce follows a labor controversy which curtails the employer's activity when its products are sold to an intervening private agency over whom the employer has no authority or control. It was said in Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 214, 83 L. Ed. 126, "it is the effect upon interstate or foreign commerce, not the source of the injury, which is the criterion." Sales to purchasers are not withdrawn from federal control because the goods are delivered f. o. b. within the state of origin. Pennsylvania R. Co. v. Clark Bros. Coal Mining Co., 238 U.S. 456, 35 S.Ct. 896, 59 L.Ed. 1406; Clover Fork Coal Co. v. N. L. R. B., 6 Cir., 97 F.2d 331.

The principal challenge of the respondent to the Board's jurisdiction, and its sole contention before the court, is in the light of the adjudications and history of the Act, somewhat belated. The jurisdiction of the Board depends, it says, upon the existence of an unfair practice affecting commerce, citing § 10(a). If the act complained of does not affect commerce, the Board has no jurisdiction. The term, "affecting commerce," has been defined by § 2(7) as "burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." The unfair labor practice complained of is the refusal of the respondent to bargain collectively with representatives of a majority of its employees, organized in an appropriate bargaining unit designated by the Board. This alleged unfair labor practice, says the respondent, had existed continuously from late in 1937 to the date of the hearing on July 20, 1939. There is nothing in the record that supports a finding that its refusal to bargain has at any time led or tended to

lead to labor disputes burdening or obstructing commerce. On the contrary, the testimony of its only witness is that during the period involved, the business of the respondent, and impliedly the volume of its shipments in interstate commerce, had continuously increased. Therefore, it says that the Labor Board not only disregarded uncontroverted evidence, but made a finding of fact not supported by any evidence whatever.

█ It would seem gratuitous, at this late date, to review the cases which hold that the objective of the National Labor Relations Act is preventative and remedial. Its purpose is to forestall labor strife that may affect commerce. So the jurisdiction of the Board is dependent not upon the actual occurrence of strikes in a specific industry, nor even upon an immediate threat of their occurrence therein, and unfair labor practices fall within the scope of the Act and the jurisdiction of the Board not because they have led or have tended to lead to labor strife in a particular instance, but by reason of the fact that long and painful experience teaches that in the generality of cases they do lead to such strife. It is this general experience that led to the exercise of the Congressional power in dealing with an evil long perceived.

No commentary could be clearer than that made by the Chief Justice in the first decision sustaining the validity of the Act, N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 627, 81 L. Ed. 893, 108 A.L.R. 1352, "the fact that there appears to have been no major disturbance in that industry in the more recent period did not dispose of the possibilities of future and like dangers to interstate commerce which Congress was entitled to foresee and to exercise its protective power to forestall." This commentary is brought into relief by the observation of the dissenting Justices in the companion case, N. L. R. B. v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 87, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352, wherein it was pointed out that in respect to the industry there involved, there was no evidence of a strike by its employees at any time, or that one was threatened, and nothing to indicate the probable result if one should occur. Nor was this a novel concept. In the first Coronado case, United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 582, 587, 66 L.Ed. 975, 27 A.L.R. 762, it was said,

304

"If Congress deems certain recurring practices though not really part of interstate commerce, likely to obstruct, restrain or burden it, it has the power to subject them to national supervision and restraint." It will be observed that power exists and may be exercised upon the likelihood of obstruction or restraint based upon experience, and that national supervision is not conditioned upon proof of obstruction or threat of restraint in specific instances. We covered this ground rather fully in Clover Fork Coal Co. v. N. L. R. B., supra, and our only justification for repetition and review is the urgent insistence of earnest counsel that the respondent is immune to the supervision of the Board.

A decree may be entered for enforcement in accordance with the prayer of the petition.

Affirmed.