## NATIONAL LABOR RELATIONS BOARD v. WHITE SWAN CO.

### No. 4666.

Circuit Court of Appeals, Fourth Circuit.

April 15, 1941.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

Lewis M. Gill, Atty., National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Robert Leland, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Herman C. A. Hofacker, of Pittsburgh, Pa., for respondent.

### PER CURIAM.

This is a petition for the enforcement of an order of the National Labor Relations Board. The Supreme Court has dismissed a certificate of this court (National Labor Relations Board v. White Swan Co., 61 S. Ct. 751, 752, 85 L.Ed. —) and the case is before us for decision. As stated in our certificate, we are of opinion that the findings of the Board as to unfair labor prac-

tices are sustained by substantial evidence; and this, in our opinion, is so clearly true that discussion of the evidence with regard thereto is unnecessary. The facts with regard to the jurisdictional question were correctly found by the Board and are fully set forth in our certificate to the Supreme Court, which was as follows:

"This is a petition for enforcement of an order of the National Labor Relations Board, which directed the White Swan Company, a corporation of Wheeling, West Virginia, engaged in the operation of a laundry and dry cleaning business, to cease and desist from certain unfair labor practices and to offer employment with back pay to certain employees held to have been discharged because of union affiliation and activities. The findings of the Board with respect to the unfair labor practices and discriminatory discharge of employees are sustained by substantial evidence; but a question has arisen, as to which the members of the Court are divided and in doubt, with respect to the jurisdiction of the Board in the premises.

"The respondent, White Swan Company, operates a combined laundry and dry cleaning establishment in the city of Wheeling, West Virginia. While certain of its supplies are obtained from without the state, the volume of the interstate business thus involved is not sufficient, in our opinion, to bring the business within the jurisdiction of the Board. The record shows that these supplies consist of soap, bluing, bleach, solvent, coal, water, paper, tape and padding, and that respondent's purchases thereof during 1938 amounted to $38,333.15, of which $10,810.90 came from without the state. Respondent, however, operates delivery trucks in Ohio as well as in West Virginia, three of the delivery routes from its plant being in Ohio and eleven in West Virginia. The business involved is necessarily of a purely local character, as the record shows that a radius of fifteen miles is the practical limit for a laundry or dry-cleaning business in this territory. The fact that business is done in Ohio outside the state in which respondent's laundry is located, results from the fact that this purely local business is located in a city on a state line. Respondent transports garments in its trucks from those of its customers who reside in Ohio to its plant in West Virginia to be serviced, and then after servicing returns the garments in its trucks to the customers. Approximately 12.93 per cent

of its gross income for 1938 was derived from this source. In addition thereto, approximately 5 per cent of its gross income during 1938 was derived from the servicing of garments which persons not in its employment collected in Ohio, brought to its plant for servicing and delivered in Ohio after they had been serviced. Respondent's total gross income in 1938 was $128,752.96. The total income from the business obtained from persons in Ohio during this period was $28,088.43.

"We recognize that the collection and delivery of garments across state lines, as above described, constitutes interstate commerce. We are advertent, however, to the admonition of the court that in applying the act we are to bear in mind 'the distinction between what is national and what is local in the activities of commerce.' N. L. R. B. v. Jones & Laughlin Steel Corp. (301 U.S. 1, 30 [57 S.Ct. 615, 621, 81 L. Ed. 893, 108 A.L.R. 1352]). And although the letter of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., may cover such collections and deliveries in interstate commerce as are here involved, the question arises whether a proper interpretation of the Act, in view of the intent of Congress, would include them. Cf. Sorrells v. United States, 287 U.S. 435, 446 (53 S.Ct. 210, 214, 77 L.Ed. 413, 86 A.L.R. 249). We are divided and in doubt as to whether such collection and delivery, which results from the fact that business of a local character, such as a laundry, is located on a state line; is sufficient to bring such business within the jurisdiction of the Board under the National Labor Relations Act. To so hold would be to bring under the jurisdiction of the Board a great variety of businesses of purely local character simply because they maintain a delivery service in cities located on state lines. As there are many such cities in the United States, the question seems to us one of sufficient importance to justify us in certifying it to the Supreme Court so that it may be definitely settled.

"Being divided and in doubt, therefore, this Court respectfully certifies to the Supreme Court of the United States, for its instruction and advice, the following questions of law, the determination of which is indispensable to a proper decision of the case.

"1. Should the National Labor Relations Act be interpreted as having application to a business of purely local character, such as a laundry, merely because such business is located in a city on a state line and derives a substantial portion of its income from business which involves collections or deliveries of articles in a state other than that in which the business is located?

"2. Where a local business, such as a laundry, is located in a city on a state line, and is not engaged in interstate commerce, except in so far as it may collect articles to be serviced and may make deliveries to customers living across the state line, is such business, by reason of such collections and deliveries, deemed engaged in 'commerce' within the meaning of Subsection 6 of Section 2 of the Act of July 5, 1935, ch. 372, 29 U.S.C.A. § 152(6), so that an unfair labor practice on its part would be an unfair labor practice 'affecting commerce' within the meaning of Subsection 7 of said section, 29 U.S.C.A. § 152(7) and Subsection (a) of Section 10, 29 U.S.C.A. § 160 (a)?"

Following our certificate the Solicitor General moved to amend by certifying to the Supreme Court a question which would embody the purchase by respondent of a portion of its supplies in interstate commerce, as well as that it derives a substantial portion of its income from business which involves collections and deliveries in interstate commerce. In denying that petition, we entered an order showing that the only questions of law as to which we entertained doubt were correctly set forth in the certificate, and pointing out that we were not permitted to certify to the court the case before us. That order, which elucidates our views as well as our doubts on the jurisdictional feature of the case, is as follows:

"A motion has been made by the Solicitor General that this Court amend the certificate heretofore made to the Supreme Court of the United States by certifying to that Court a question which would embody the purchase by respondent of a portion of its supplies in interstate commerce as well as the fact that it derives a substantial portion of its income from business which involves collections and deliveries in interstate commerce. We are clearly of opinion, however, as stated in our certificate, that the volume of interstate business involved in the purchase of supplies is not sufficient to bring the business of respondent within the jurisdiction of the Board. And, if it be held that the fact that re-

spondent derives a substantial portion of its income from business which involves collections and deliveries in a state other than that in which the business is located does not confer jurisdiction on the Board under the Act, we are of opinion that the Board was without jurisdiction. The amount of income derived from the business involving such collections and deliveries is undoubtedly a substantial amount of the income of respondent however; and our doubt is concerned with the nature of the business involved in the collections and deliveries and the application of the Act thereto, not as to the substantial nature of the income derived therefrom. The only questions as to which we are divided and need instruction and advice are those which we have certified. When these are answered we can proceed to decide the case.

"Adding to the question the element involved in the purchase of supplies would confuse the question as to which instruction is desired and would not aid in its solution. If the business of collecting and delivering articles in the manner stated in the questions brings the business of respondent within the Board's jurisdiction, the purchase of supplies does not increase the jurisdiction: if it does not, such purchase, in our opinion, cannot confer jurisdiction. The case is not one of aggregating different elements upon which a finding of jurisdiction may be based; but of determining whether one of the elements tends to furnish any basis of jurisdiction.

"Notwithstanding what we have said above, we would certify the question suggested by the Solicitor General, but for the fact that to do so would be to certify to the Supreme Court the entire jurisdictional feature of the case before us and ask the Court's decision on that feature of the case. This we may not do. We have certified the facts. We have asked advice as to the only question upon which we entertain doubt. If the Court prefers to pass upon the case before us as embodied in the question proposed by the Solicitor General, it has full power to bring the case before it by certiorari."

Since the Supreme Court holds that the questions are defective because they "do not reflect the precise conclusions of the Board and the precise findings on which those conclusions were based" and that if "they did reflect those conclusions and findings, they would be defective as calling for a 'decision of the whole case'", there is

nothing that we can do under the certification statute, but must proceed to decide the case. A majority of the court are of opinion that the questions as certified should be answered by us in the affirmative and that the Board has jurisdiction in the premises. The Board consents that paragraph 2c of its order be modified by striking therefrom the words "will cease and desist in the manner set forth" and substituting the words "will not engage in the conduct described". It will be so modified; and, as so modified, it will be enforced.

Modified and enforced.