## NATIONAL LABOR RELATIONS BOARD v. NILES FIRE BRICK CO.

### No. 8857.

Circuit Court of Appeals, Sixth Circuit.

Dec. 5, 1941.

Philip G. Phillips, of Cincinnati, Ohio (Robert . B. Watts, Laurence A. Knapp, Ernest A. Gross, Sylvester Garrett, and Edward J. Creswell, all of Washington, D. C., on the brief), for petitioner.

Paul Z. Hodge, of Warren, Ohio (George W. Secrest, of Warren, Ohio, on the brief), for respondent.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The National Labor Relations Board filed its petition for enforcement of an order against The Niles Fire Brick Company, commanding the respondent to desist from unfair labor practices; to disestablish an independent union as bargaining agent; and to reinstate and pay employees who had been, because of discrimination, discharged and denied employment. The respondent denies jurisdiction of the Board in making its order, and contends that the order was not supported by evidence.

With regard to the question of jurisdiction, it appears that on September 23, 1937, the United Brick Workers' L.I.U., referred to hereafter as the Union, filed a petition requesting an investigation and certification of representatives under the provisions of Section 9 (c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 159(c). A hearing was held, and testimony was introduced on behalf of the petitioner, and by intervenors who represented another group of respondent's employees.

On November 15, 1937, the Union filed charges that respondent had engaged in unfair labor practices within the meaning of the act; and on January 14, 1938, the Board ordered that the case involving the petition for certification of bargaining agent be consolidated with the charge of unfair labor practices.

On March 10, 1938, hearing on the consolidated cases commenced before the duly designated Trial Examiner of the Board. At the hearing the respondent was represented by counsel, participated therein, and objected, without avail, to the consolidation. The transcript of the record in the representation case was offered in evidence by petitioner and, over the objection of respondent, was admitted in the consolidated cases. It is this evidence of which the respondent complains; as it is upon certain stipulations therein contained that jurisdiction was found to exist on the ground that the respondent was engaged in interstate commerce.

When the consolidated cases came before the Examiner, in order to determine jurisdiction, the first question to be decided, was whether the respondent was engaged in interstate commerce. The evidence in the representation case, in which some proofs had previously been taken, appears to have consisted almost entirely of the introduction of evidence on this very question of interstate commerce. No final determination had been made in the representation case, as it was stated that briefs were to be filed thereafter.

When hearing commenced in the consolidated cases, therefore, the first action of counsel for the Board was to introduce the transcript of the previous hearing for the purpose of showing that respondent had stipulated facts sufficient to resolve the conclusion that it was engaged in interstate commerce. This stipulation in the previous hearing consisted of admissions on the part of respondent that it secured approximately 60% of the raw materials which it used in making its products, outside the State of Ohio; and that, in the course of its business, it shipped approximately 10% of its finished product outside the state, of which the greatest part was sent to Pennsylvania, where the company had a salesman located.

Under the rules of the Board, respondent was a party in the representation case. National Labor Relations Board Rules and Regulations, Series 2, as amended, Art. III, Sec. 3 (Title 29, Sec. 203.3. Code of Federal Regulations of the United States of America. 1939—Supp.). It was given notice of that proceeding, was represented by its counsel, participated therein, and moved to dismiss the petition on the ground of

lack of jurisdiction. In opening the evidence in that proceeding, the attorney for the Board stated to the Examiner the admitted facts, as "the form of a stipulation between counsel for respondent and myself for the Board." Thereafter, in answer to the inquiry of the Examiner as to whether the stipulation was agreed to "by the respondent," the attorney for The Niles Fire Brick Company supplemented certain facts, and stated that the stipulation was correct. On the hearing of the subsequent complaint of unfair labor practices, counsel for The Niles Fire Brick Company objected to the introduction of this stipulation, as shown by the transcript of the record in the representation case, on the ground that the two cases could not be consolidated and that respondent had not been a party to the previous case. In its contention, respondent relied upon an interpretation of Section 9 (c) of the statute, which provides that in representation cases the Board shall provide for a hearing, either in conjunction with a proceeding under Section 10, 29 U.S.C.A. § 160, or otherwise. It is claimed that the hearing of the unfair practices case was not held in conjunction with the representation case, as the latter had been concluded, and, therefore, a joint hearing was impossible.

To the claim of counsel for the Board that, under Art. II, Sec. 36 (b) and Art. III, Sec. 10 (c) (2), of the Rules and Regulations of the Board, such consolidation was authorized, respondent answers that, since Congress has provided a specific method of procedure in Section 9 (c) of the act, it has impliedly negatived the power of the Board to adopt any other procedure, under the rule of statutory construction embodied in the maxim, expressio unius est exclusio alterius.

Respondent's position is based on highly technical grounds. After all essential jurisdictional facts have been virtually admitted, the argument, that the Board's determination on such admissions should be held void because of subtleties of pleading, is not persuasive.

■ No findings were ever filed in the representation case and no review of that proceeding was sought. In the subsequent case, which is now before the court, counsel for respondent stated, when seeking to introduce further evidence on the question of interstate commerce, that he did not wish to refute the evidence of the previous hearing, but only wanted to amplify it by additional testimony. It appears from the argument of respondent's counsel in their brief and in open court, that the facts are substantially the same as revealed by the stipulation in the first representation case. The only use made of the record of the representation case, was limited to the introduction of the stipulation as proof in the subsequent proceeding. From the foregoing, we are constrained to hold that the errors claimed by respondent with reference to the consolidation and stipulation, could not be said to relate to more than procedure; and, there being no showing of prejudice therein to the rights of respondent, appellant's contention in this regard, is without merit. See National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 342, 60 S.Ct. 918, 84 L.Ed. 1226.

■ It is urged that the respondent's business is of such a nature, and its shipments of raw materials from Pennsylvania to Ohio, together with its commerce from Ohio outside the state, are so small, that it cannot be said to be engaged in interstate commerce within the meaning of the act. But the fact that its business is localized within a certain area in two adjacent states, or that it could have secured its raw materials from within the state of Ohio, does not militate against the interstate nature of its commerce. National Labor Relations Board v. Bradford Dyeing Association, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226. It was, in fact, substantial; and it crossed the state boundaries. This constituted interstate commerce and, under the admitted facts, was sufficient to give jurisdiction to the Board, within the intendment of the statute. "Given the other needful conditions, commerce may be affected in the same manner and to the same extent in proportion to its volume, whether it be great or small. Examining the Act in the light of its purpose and of the circumstances in which it must be applied, we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis." National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 672, 83 L.Ed. 1014. See National Labor Relations Board v. Alloy Cast Steel Co., 6 Cir., 117 F.2d 302.

█ It may be further remarked that although the proofs show that respondent herein was engaged in interstate commerce, it is not necessary, in order that jurisdiction attach, to show such fact, if it appear that the impact of a labor controversy is such that it would affect interstate commerce. The statute extends to the protection of interstate commerce from interference or injury due to activities that are wholly intrastate, and an employer who is not engaged in interstate commerce, or who is not engaged in commerce at all, may be subject to the jurisdiction of the Board. National Labor Relations Board v. Jones & Laughlin Steel Co., 301 U.S. 1, 38, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Fainblatt, supra.

On the question of whether the findings of the Board were supported by substantial evidence, it appears that organization of the Union commenced late in May, 1937, and respondent ceased all operations, without notice to the employees, about the middle of the following month. All employees were paid off in full a week prior to the usual pay day and their pay roll identification badges were taken up. Shortly after the shutdown, the Union committee called upon the general manager and stated that it understood that the shutdown constituted final discharge of the employees; but upon request, respondent signed a memorandum, stating that on the reopening of the plant there would be no discrimination shown. A short time thereafter, the plant was reopened and the Union committee called on the general manager to present a proposed contract. They were told to return later for further discussion, but were advised not to bring back the Union organizer who had accompanied them. In the subsequent conference it appears from evidence on the part of petitioner, that the vice president informed the committee that he would not talk to the organizer in question, told the group to forget the CIO, and suggested that if the men formed an independent union, the respondent might go along with them. The labor foreman expressed himself in the same manner and asked the vice president of the Union why he didn't form an independent group. Thereafter, the committee, in a further conference, asked that the respondent consider a proposed contract, section by section, but were advised by the general manager that such a

procedure was useless and that the company was not going to sign any contract. Finally, the Union suggested that respondent write its own contract, and upon refusal, the employees went on strike. When the vice president was asked if he would consider a contract with an independent Union, he replied affirmatively, and certain of the employees campaigned among the strikers to get them to go back to work. As a result of such activities and the apparent hostility of respondent to the Union, the men finally voted to end the strike and return to work on August 1st. The Union, thereafter, sent a committee asking the general manager to refrain from discrimination, and were told that the Union was "busted" and that they should approach him in the future, individually, and not as a Union committee. After the strike was ended, certain employees who had conferred with the vice president, obtained blank membership cards for an independent Union and started a membership drive. When a Federal Labor Conciliator interviewed respondent thereafter, and investigated the origin of the independent Union, efforts to promote it were temporarily discontinued, but thereafter, when the Union petitioned for certification as bargaining agent, the employees who had interviewed the general manager, went among the other workmen with a petition, setting forth that they did not want any kind of an election. The record is replete with evidence of instances where the labor foreman and the general manager warned that employees would not get much work where they had refused to join the independent Union, and that if workmen would not join the independent they would lose their jobs. When operations were resumed following the strike, respondent denied employment to many members of the Union for varying periods; and the Board found that respondent had discriminated against seven leading members of the Union by laying them off indefinitely. In some cases, reinstatement was obtained when a Conciliator of the United States Department of Labor was called in by the Union to intercede with respondent.

Evidence adduced on behalf of respondent in many instances, gives plausible reasons for the conduct complained of. It is claimed that the men were paid a week in advance of the closing for their own convenience; that the badges were collected because the men had made a deposit of 50 cents and it was decided to return this de-

posit to them because of the fact it was thought many would not return on resumption of work. The testimony of officials of the respondent, in many instances, is to the effect that they did not make the statements alleged by the Union and that there must have been a misunderstanding as to such statements and conversations; that they were not opposed to the Union; and that they gave instructions that the employees were not to be coerced, or interfered with.

■ However, the matter of the credibility of the witnesses was for the Board, and it is our conclusion that its findings were supported by substantial evidence. The improper nature of the statements alleged to have been made, has been passed upon in National Labor Relations Board v. Viking Pump Co., 8 Cir., 113 F.2d 759, certiorari denied 312 U.S. 680, 61 S.Ct. 449, 85 L.Ed. 1119; M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 432, 435. If the Board believed petitioner's evidence, it was justified in the conclusion that respondent's unwillingness to deal with the Union resulted entirely from respondent's hostility. National Labor Relations Board v. Elkland Leather Co., 3 Cir., 114 F.2d 221, certiorari denied 311 U.S. 705, 61 S.Ct. 170, 85 L.Ed. 457. With reference to respondent's responsibility for the foreman's expression of opposition to the Union and efforts to promote the independent, see International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 79, 81, 61 S. Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Link Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368; H. J. Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 518, 61 S.Ct. 320, 85 L.Ed. 309; Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 295, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200. The conclusion that the independent Union was brought into existence with the powerful assistance of respondent's known hostility, was an inference which could properly be drawn by the Board from the evidence. See Triplex Screw Co. v. National Labor Relations Board, 6 Cir., 117 F.2d 858; International Association of Machinists v. National Labor Relations Board, supra. No dues were ever collected by the independent; the organization incurred no expenses during the seven months' period of its existence; up to the time of the hearing, no grievances were ever presented, nor was any proposed contract submitted, and its organization was sketchy and ineffective. From the foregoing, and in view of the evidence, it appears that the Board was justified in concluding that the independent Union was inherently incapable of functioning as a real bargaining agent or an independent representative of the employees. See National Labor Relations Board v. American Manufacturing Co., 2 Cir., 106 F.2d 61, modified and affirmed 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988; National Labor Relations Board v. Link Belt Co., supra. The finding that the independent Union was formed in violation of Sec. 8 (2) of the act, 29 U.S.C.A. § 158(2), is fully supported by evidence. Triplex Screw Co. v. National Labor Relations Board, supra; National Labor Relations Board v. Dow Chemical Co., 6 Cir., 117 F.2d 455. Refusal to reinstate Union members while retaining new employees hired during and after the strike, which, according to the finding of the Board, had taken place, constitutes a violation of the act. Stewart Die Casting Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 849, certiorari denied 312 U.S. 680, 61 S.Ct. 449, 85 L.Ed. 1119; Black Diamond Steamship Corp. v. National Labor Relations Board, 2 Cir., 94 F.2d 875, 879, certiorari denied 304 U.S. 579, 58 S.Ct. 1044, 82 L.Ed. 1542; National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 94 F.2d 138, 143, certiorari denied 304 U.S. 575, 58 S.Ct. 1045, 82 L.Ed. 1539.

Sufficient of the pertinent evidence has been stated to arrive at a determination of the case. It would serve no useful purpose to detail the many additional facts appearing in the record, and the contentions of the parties which are made with reference to them. From the foregoing it is our conclusion that the findings of the Board were supported by substantial evidence, and its order, therefore, in all respects, is affirmed.