## TYNE CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 7803.

Circuit Court of Appeals, Seventh Circuit.

Feb. 20, 1942.

James D. Murphy and Albin Dommermuth, both of Chicago, Ill., and L. D. Potter, of Racine, Wis., for petitioner.

Robert B. Watts, and Marcel Mallet-Prevost, both of Washington, D. C., and I. S. Dorfman, of Chicago, Ill., and Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, Hilda D. Shea, and Robert N. Cook, all of Washington, D. C., for respondent.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Petitioner here seeks to set aside an order of the National Labor Relations Board, which the latter in turn seeks to enforce. The order resulted from a charge made

against petitioner before the Board by the Steamfitters Protective Association, Local 597, which is affiliated with the American Federation of Labor. The charge alleged that petitioner had violated Section 8 (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(1, 3), by interfering with, restraining, and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act, 29 U.S.C.A. § 157, and by discriminatively discharging seven employees because they applied for union membership. The Board found the charges to be true and ordered petitioner to cease and desist from such unfair labor practices, to reinstate with back pay the seven employees discharged, and to post the usual notices.

Petitioner was engaged in the wholesale plumbing supply business in Chicago. It manufactured no products, and it had no exclusive agency. It dealt in manufactured products of others, which could be had in Chicago from many other wholesale dealers. However, it did cut pipe to desired lengths and thread them, and occasionally bent pipe to order. During the year 1940 it imported, from points outside Illinois, about fifty per cent of the $500,000 worth of materials purchased by it. In the same year it sold of its goods and wares about $750,000 worth, of which seventy-five per cent were shipped to points in Illinois, and the remaining amount was shipped to outside points.

Petitioner contends that it is not engaged in interstate commerce as contemplated by the Act, 29 U.S.C.A. § 151 et seq. It points to the following admonition in National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 621, 81 L.Ed. 893, 108 A.L.R. 1352: "The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several States' and the internal concerns of a State. That distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system." It further calls our attention to Superior Coal Co. v. Department of Finance, 377 Ill. 282, 36 N.E.2d 354, 361, wherein the Court said: "We are not unmindful of the fact that recent decisions of the Supreme Court of the United States have changed the concept of 'interstate commerce' as reflected in earlier decisions. The result is, in effect, that many transactions long deemed to have been wholly intrastate are now held to partake of an interstate character. The pendulum has swung far and perhaps it is now swinging back to center."

Petitioner's argument is that we should be apprehensive of the danger that, under the pretext that interstate commerce is burdened, the Labor Board will, by taking jurisdiction of such business as that of the Tyne Company, extend the jurisdiction of the federal authority to local matters beyond that contemplated by our Constitution, and by such usurpation of the state right extinguish the distinction between what is national and what is local.

We do not minimize the necessity for such apprehension, nor do we disregard the logic of petitioner's argument in this respect. However, we are governed by the rulings of the Supreme Court. It would serve no good purpose to analyze the many cases on this subject. It is sufficient to say that under the Jones & Laughlin case, supra, and the more recent cases of National Labor Relations Board v. Bradford Dyeing Association, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226, and National Labor Relations Board v. Henry Levaur, Inc., 1 Cir., 115 F.2d 105, certiorari denied, 312 U.S. 682, 61 S.Ct. 550, 85 L.Ed. 1120, the Board did not err in holding that the Act was applicable to petitioner. It may be true that danger to our Constitution lurks in such construction, but with that ultimate result we are not here concerned, and we are not its authors. It is true that the precise state of facts presented here has not been before the Supreme Court, but so many cases of analogous nature have been before that Court and decided adversely to the contention here made that we feel it would be a violation of our duty not to follow them, even though based upon analogies. It may be that the pendulum is swinging back, as noted by our brothers of the Illinois Supreme Court, but if so, the swing has not been of such momentum as to attract our attention. Moreover, we are not the actuating force which governs the movement of the pendulum.

Petitioner further contends that the Board's findings as to its unfair labor practices are not supported by substantial evidence. There is no doubt that in some instances the Board's findings and its brief misquote testimony, and in those instances the Board's findings as to those facts are not supported by any evidence, substantial or otherwise. But aside from those instances, there is uncontroverted as well as

controverted evidence of petitioner's active belligerency to this particular Union, which under the rulings in National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368, and Heinz Co. v. National Labor Relations Board, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309, and analogous cases, constitutes substantial evidence to support the findings of unfair labor practices. Where different and unanalogous facts from those previously passed upon by the Supreme Court are presented to us for determination as to substantiality, we have no hesitancy in giving our views; but where, as here, the facts are almost identical or closely analogous, to those heretofore ruled upon by the Supreme Court, our views, if contrary, are neither helpful nor ponderous. See National Labor Relations Board v. Chicago Apparatus Company, 7 Cir., 116 F.2d 753; New York Handkerchief Mfg. Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 144; and analogous cases.

■ What we have said applies with equal force to the discharge of the seven employees. There was substantial evidence supporting petitioner's contention that the discharges were in good faith and for valid causes. On the other hand there was contradicted and uncontradicted evidence, which, under the decisions of the Supreme Court above referred to, supported the Board's findings. Under these circumstances we are not permitted to question the integrity of those findings.

■ Petitioner further urges that the Examiner erroneously refused to admit competent and relevant evidence offered by it. This evidence was said to support its allegation, based on information and belief, that the Union had instituted a boycott against petitioner, and that it had attempted to restrict the sale of petitioner's products to those members of an employers' association who employed union members only. In support of this allegation petitioner merely offered proof that the International Union, of which Local 597 is a member, had been indicted with certain of its other locals for engaging in an unlawful conspiracy in restraint of trade. In the first place it was neither alleged nor offered to be proved that the instant Local was named in that indictment, and of course it would not be bound by it. National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599. Furthermore, the presumption of guilt does not arise from the mere return of an indictment.

However, petitioner directs our attention to section 10(b) of the Act, 29 U.S.C.A. 160(b), which provides that the rules of evidence prevailing in courts of law and equity shall not be controlling in proceedings under the National Labor Relations Act. In construing this provision, the Supreme Court in Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126, said: "The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. * * * Mere uncorroborated hearsay or rumor does not constitute substantial evidence." To broaden the scope of this wise pronouncement petitioner relies upon National Labor Relations Board v. Remington Rand, Inc., 94 F.2d 862, 873, decided by the Court of Appeals for the Second Circuit, certiorari denied, 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540. The court there said that the section under discussion here " * * * does not mean that mere rumor will serve to 'support' a finding, but hearsay may do so, at least if more is not conveniently available, and if in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs." It will be noted that this interpretation abounds in terms which are quite relative in their meaning, such as, "not conveniently available," "kind of evidence," "responsible persons," and "serious affairs," and we think must leave the trier of facts in confusion worse confounded. Furthermore, if this interpretation be the correct one it is clear to us that mere hearsay or rumor can never support a finding, which is contrary to Judge Hand's first thesis that mere hearsay may do so, because responsible persons are not accustomed to rely on hearsay in serious affairs.

■ There is no doubt that this interpretation is much broader than, and in direct conflict with, that in the Edison case, but the fact that certiorari was denied in the Remington case means nothing in support of petitioner's contention. Especially is this true since the Edison case was decided later. There was no error in excluding such evidence.

■ It is further contended by petitioner that it does not and has not denied

to its employees their right to organize and to bargain collectively. We may concede this, but that is not sufficient to meet the charge. They must have had the right to join the Union of their choice free from the influence of their employers. There is evidence here that petitioner attempted to interfere with the choice of some of the members. Whether that interference was successful in any decree we can not say, but it is uncontradicted that several employees, though comparatively few in number, were not thereby influenced, and filed their applications for membership, although the record does not disclose that any of them were accepted as members. Under the many rulings of the Supreme Court we are compelled to hold that this constituted substantial evidence in support of the charge and of the Board's finding. Whether the Union here referred to was a fit one for petitioner's employees to join, or whether it was engaged in efforts to destroy petitioner's business, seem not to be justiciable questions in cases of this kind.

Petitioner further urges that the remedy prescribed by the Board is not calculated to effectuate the policies of the Act, but is arbitrary and punitive and contrary to law. The Supreme Court has passed upon these and analogous questions adversely to petitioner's contentions so many times that it is needless to cite authority. Moreover, Congress with full knowledge of all these questions and decisions has declined to amend the Act, and by this inaction we are warranted in presuming that the Act has been rightly construed and the policies have been properly effectuated in accordance with its intentions.

The order is affirmed, and the petition of the Board for an order enforcing its order is granted.