## NATIONAL LABOR RELATIONS BOARD
### v. J. L. HUDSON CO.
#### No. 9379.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1943.

Philip G. Phillips, of Cincinnati, Ohio (Robert B. Watts, Ernest A. Gross, Howard Lichtenstein, David Findling, and John E. Lawyer, all of Washington, D. C., on the brief), for petitioner.

Hal H. Smith, of Detroit, Mich. (Hal H. Smith, Archibald Broomfield, Albert E. Meder, and Beaumont, Smith & Harris, all of Detroit, Mich., on the brief), for respondent.

Before HICKS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

In resistance to the petition of the National Labor Relations Board for enforcement of its order, the respondent challenges the jurisdiction of the Board upon the principal ground that the respondent, being a retailer of merchandise and assertedly not engaged in interstate commerce, is not included within the sweep of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.; and that, therefore, the Board is vested with no ju-

risdiction in the premises. Respondent insists, moreover, that the jurisdiction of the Board to make the order sought to be enforced cannot be sustained on its findings and the record of its proceedings.

The respondent, The J. L. Hudson Company, a Michigan corporation, not licensed to do business elsewhere and not a subsidiary of any other company, owns, operates and maintains an enormous retail department store in Detroit, Michigan. The store building covers an entire square city block and consists of twenty-four stories above ground, four basement levels, and several mezzanine floors. The store occupies 1,875,337 square feet of space. The store company also maintains and operates in Detroit five warehouses, occupying 900,783 square feet. Some 8,562 persons are employed in 240 departments.

The company is engaged in the purchase and resale of so wide a variety of goods, wares, merchandise and commodities that the most discriminating customer could hardly depart dissatisfied with her range of choice of wearing apparel, household goods, and all the modern accessories to abundant living. One of the less meticulous sex may procure, within the hospitable portals of the store, anything from brogans and overalls to tuxedos, golf sticks and piccolos. A lady may have her stockings mended, her wrist watch repaired, her doctor's prescription filled, her Sunday cake baked, her furs stored, or her protesting offspring's hair cut. The store will install electrical or gas equipment in her home, repair her furnace or lawnmower; trim her bonnet, take her picture, tune her piano, or fit her corset. These are scant instances, barely illustrative of the expansive public service rendered by this outstanding American mercantile establishment, whose activities are the subject matter of this controversy.

The total cost of merchandise purchased by the respondent during its fiscal year ending January 31, 1942, was $43,864,289. For this period, goods valued at more than $35,000,000, constituting over eighty percent of the total value of merchandise purchased, were shipped to the respondent from points outside the State of Michigan. Purchases of goods shipped from foreign countries approximated $300,000 in value.

For the same fiscal year, the total sales of respondent's merchandise amounted to $71,633,737, of which $1,291,006 in value of goods, or 1⁸⁄₁₀ percent of the total sales, were sold and shipped to customers and users outside the limits of Michigan. Sales through its mail-order department aggregated $553,841.27; whereof, extra-state sales approximated fifteen percent.

For deliveries to customers in Detroit and in other places in Michigan, the store company owns and operates more than two hundred and fifty automobile trucks, but does not by its own trucks deliver commodities beyond the confines of Michigan. Parcel post, railway express, fast and regular freight trains, and interstate truck lines are the instrumentalities employed by the company for the importation and exportation of merchandise from and to places outside Michigan.

More than a million and a half dollars were expended by the respondent during the illustrative fiscal year in advertising, through the media of newspapers, periodicals, radio and direct mail. Approximately one-sixth of the sum total of this advertising was circulated in other states than Michigan. Thirty-six active trade-marks are registered in the name of respondent in the United States Patent Office.

The respondent urges that whatever may be the power of Congress to regulate activities which burden or obstruct commerce, it did not in the National Labor Relations Act regulate or attempt to regulate the acts and practices of a retailer of merchandise, even though the acts and practices burden or obstruct commerce. It is contended that to empower the Labor Board with jurisdiction as defined in Section 10(a) of the Act, it must appear in a given situation that an unfair labor practice exists, and that such practice affects commerce; and that "affecting commerce," in the express language of Section 2(7) of the Act "means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." Respondent insists that there is no allegation in the complaint and no finding by the Board that the acts complained of were "in commerce," or of themselves burdened or obstructed commerce; that there is no finding by the Board, and could be none on the stipulated facts upon which the cause was tried, that the respondent was engaged in unfair labor practices, as defined in the Act, or that any such acts or practices of the respondent charged in the complaint led or tended to

lead to a labor dispute burdening or obstructing commerce, or its free flow; and that proof and finding of the existence of requisites to the Board's jurisdiction were not waived by the respondent.

■ The Supreme Court, since promulgation of its opinion in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 81 L. Ed. 893, 108 A.L.R. 1352, has adhered to the doctrine that activities, intrastate in character when separately considered, if so closely and substantially related to interstate commerce that their control is essential or appropriate for the protection of interstate commerce from burden or obstruction, fall within the ambit of control by Congress.

■ Whether or not particular activities in the conduct of intrastate enterprise affect interstate commerce in such close and intimate fashion as to be subject to Federal control has been left for determination upon the facts of each individual case. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 222, 59 S. Ct. 206, 83 L.Ed. 126.

■ In each case, the question is one of degree; that is to say, "whether the unfair labor practices involved have such a close and substantial relation to the freedom of interstate commerce from injurious restraint that these practices may constitutionally be made the subject of federal cognizance through provisions looking to the peaceable adjustment of labor disputes." Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 661, 82 L.Ed. 954.

■ The purpose of the National Labor Relations Act being to protect and foster interstate commerce, the jurisdiction of the Labor Board may attach before actual industrial strife materializes to obstruct that commerce. National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226.

In National Labor Relations Board v. Fainblatt, 306 U.S. 601, 604, 606, 307 U. S. 609, 59 S.Ct. 668, 670, 83 L.Ed. 1014, the comment was made that repeated decisions of the Supreme Court have held that an employer, although not personally engaged in interstate commerce, may be subject to the National Labor Relations Act. "The end sought in the enactment of the statute," says the Chief Justice, "was the prevention of the disturbance to interstate commerce consequent upon strikes and labor disputes induced or likely to be induced because of unfair labor practices named in the Act." The volume of commerce involved was deemed insignificant, for "the power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small."

The sweeping concept of the regulatory power of Congress over interstate commerce was again emphasized by the Chief Justice in United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 526, 86 L.Ed. 726: "The commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce. * * * It follows that no form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to Congress. Hence the reach of that power extends to those intrastate activities which in a substantial way interfere with or obstruct the exercise of the granted power."

The constantly expanding scope of the interstate commerce clause was further advanced in Wickard, Secretary of Agriculture, v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 89, 87 L.Ed. ——, decided November 9, 1942, wherein a small wheat grower was held liable to the marketing penalty imposed by the 1941 amendment to the Agricultural Adjustment Act of 1938, extending Federal regulation to production not intended in any part for commerce but entirely for consumption on the farm. The Supreme Court declared that a local activity, though not regarded as commerce, "may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect.'"

Even employees doing the work of maintenance and operation of a building, whose tenants were engaged principally in the production of goods for interstate commerce, have been held by the Supreme Court to be engaged in an "occupation necessary to the production" of goods in interstate commerce, within the applicability of

the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

Both the rationale and the decision in the Supreme Court cases which have been cited, and in others which could be adduced, gainsay the argument of respondent that the mere fact that it is a retailer of merchandise, conducting business as it does, exempts respondent from the coverage of the National Labor Relations Act. Strife with its employees, causing cessation or curtailment of its vast operations, could burden or obstruct interstate commerce as clearly as could industrial strife in enterprises repeatedly held subject to the National Labor Relations Act.

 Time and again the lower courts of the United States, in conformity with the highest authority, have rejected contentions similar to those made by the respondent here. The jurisdiction of the Labor Board to issue the order sought to be enforced in this case is supported, not only by previous decisions in this circuit, but by uniformity of decision in other circuits, as well. Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 97 F.2d 331; National Labor Relations Board v. Alloy Cast Steel Co., 6 Cir., 117 F.2d 302; National Labor Relations Board v. Suburban Lumber Co., 3 Cir., 121 F.2d 829; National Labor Relations Board v. Kudile, 3 Cir., 130 F.2d 615; National Labor Relations Board v. Schmidt Baking Co., 4 Cir., 122 F.2d 162; National Labor Relations Board v. White Swan Co., 4 Cir., 118 F.2d 1002; National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951; Tyne Co. v. National Labor Relations Board, 7 Cir., 125 F.2d 832; Wilson & Co. v. National Labor Relations Board, 7 Cir., 124 F.2d 845; National Labor Relations Board v. Bank of America, 9 Cir., 130 F.2d 624; Southern Colorado Power Co. v. National Labor Relations Board, 10 Cir., 111 F.2d 539; National Labor Relations Board v. Henry Levaur, Inc., 1 Cir., 115 F.2d 105. Orders of the Labor Board have been enforced in two reported cases affecting large mercantile companies. Montgomery Ward & Co. v. National Labor Relations Board, 7 Cir., 107 F.2d 555; F. W. Woolworth Co. v. National Labor Relations Board, 2 Cir., 121 F.2d 658.

It may not be amiss to repeat in this context what this court, speaking through Judge Simons, said in National Labor Relations Board v. Alloy Cast Steel Co., 6 Cir., 117 F.2d 302, 303: "It would seem gratuitous, at this late date, to review the cases which hold that the objective of the National Labor Relations Act is preventative and remedial. Its purpose is to forestall labor strife that may affect commerce. So the jurisdiction of the Board is dependent not upon the actual occurrence of strikes in a specific industry, nor even upon an immediate threat of their occurrence therein, and unfair labor practices fall within the scope of the Act and the jurisdiction of the Board not because they have led or have tended to lead to labor strife in a particular instance, but by reason of the fact that long and painful experience teaches that in the generality of cases they do lead to such strife. It is this general experience that led to the exercise of· the Congressional power in dealing with an evil long perceived."

There remains for consideration the contention of respondent that the findings of the Board were insufficient to sustain its cease and desist order, in that there was no finding that the respondent was engaged in unfair labor practices, as defined in the Act, or that the practices of respondent tended to lead to a labor controversy burdening or obstructing commerce.

The rejoinder of the Board is that the administrative agency was not required to make findings as to unfair labor practices in view of the provisions of a stipulation, in which the parties respectively agreed to waive their rights to a hearing as provided in the Act and to the making of findings of fact and conclusions of law by the Board, "other than as to the question of whether the Act is applicable to the respondent and to the employees of the respondent under the facts" set forth in the stipulation. The 31st paragraph of the stipulation expressly provided: "The Respondent, the Union and Fred L. Young waive all rights to contest the validity and propriety of entry of the above order by the Board and the entry of any enforcement order and decree by any appropriate court, except that the Respondent reserves to itself the right to be heard in argument orally and by brief upon the facts herein stipulated before the Board and in any appropriate court on the sole issue of the applicability of the Act to the Respondent and to the employees of the Respondent, and the jurisdiction of the Board and such appropriate court to enter against the Re-

384

spondent the order provided for in Paragraph 29 of this stipulation."

Paragraph 29 of the stipulation set forth the precise form and contents of the order to be entered and that order was entered by the Board in haec verba. The order directed respondent to cease and desist from discouraging, by discriminative methods, its employees from membership in the Union, or in any other labor organization, and from interference, restraint or coercion of its employees with respect to collective bargaining.

The order directed respondent to take the affirmative action of offering to three named employees immediate and full reinstatement to their respective jobs, without prejudice to their seniority or other rights, and to make them whole for loss of pay suffered from respondent's discrimination against them. The customary posting of notices and the notification of the Regional Director of compliance with the order were also directed.

■ No valid reason appears why the Board should be required, in the face of such clear-cut stipulation, to do more than was demanded by the stipulation upon which the case was tried, that is, to determine whether the National Labor Relations Act was applicable to the respondent and its employees. This duty the Board performed with care, as is evidenced by its reasoning and the authorities cited for its conclusion that The J. L. Hudson Company is subject to the Act. The salient stipulated facts, which were sketched at the outset of this opinion, impel us to the same conclusion as that reached by the Board.

Hindrance rather than aid would be given to expeditious and inexpensive procedure before the National Labor Relations Board were the Courts of Appeals, being vested with jurisdiction to enforce or to deny enforcement of the Board's orders, to say that an employer may not lawfully waive the requirement which would otherwise exist, that the Board make findings of fact with respect to unfair labor practices, or that the antagonists may not stipulate concerning the order to be entered by the Board, with its approval.

■ Stipulations are favored in law; and there is authority for the procedure followed by the Board in the instant labor controversy. Consult National Labor Relations Board v. Henry Levaur, Inc., 1

Cir., 115 F.2d 105, where the parties, at the hearing before a trial examiner, by stipulation consented to the entry of an order by the Board and a petition to the Circuit Court of Appeals for its enforcement. This order required the respondents to cease and desist from unfair labor practices charged, and directed certain affirmative action subject only to respondents' right to contest the jurisdiction of the Board. The Board entered the agreed order and petitioned the Court of Appeals for its enforcement. Finding that the respondents were subject to the jurisdiction of the Board and that the Board had properly entered the agreed order, the petition for enforcement of the order was granted. See, also, National Labor Relations Board v. Gerling Furniture Mfg. Co., 7 Cir., 103 F.2d 663; National Labor Relations Board v. Pure Oil Company, 5 Cir., 103 F.2d 497. Compare National Labor Relations Board v. Robert S. Green, 4 Cir., 125 F.2d 485, in which an order of enforcement was entered, where the jurisdictional facts were not disputed and the only question involved was the jurisdiction of the Board.

The petition of the National Labor Relations Board for enforcement of its order is allowed; and an appropriate decree to that end will be entered.