### NATIONAL LABOR RELATIONS BOARD v. VULCAN FORGING CO.
#### No. 11131.

United States Court of Appeals
Sixth Circuit.

Decided March 23, 1951.

---

928

Bernard Dunau, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Bernard Dunau and Duane Beeson, Washington, D. C., on the brief), for petitioner.

Paul Franseth, Detroit, Mich. (Voorhies, Long, Ryan & McNair, and Paul Franseth, Detroit, Mich., on the brief), for respondent.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The National Labor Relations Board, claiming that respondent had refused to

bargain collectively with a duly elected bargaining agent of its employees, petitioned for enforcement of its order directing respondent to cease and desist from refusing to bargain collectively with the union; to require respondent to bargain collectively, and to post the notices provided for in such cases.

Respondent claims that the failure of the Board to allege or prove compliance with the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., was a bar to enforcement of the order; that the operations of respondent did not affect interstate commerce within the meaning of the Act, and the Board, accordingly, had no jurisdiction in the case; that its employees had repudiated the union which was no longer their bargaining agent; and that respondent had not refused to bargain collectively in violation of the Act.

The background of the case is as follows: In an election held at respondent's plant March 13, 1947, the employees, by a vote of 12 to 10, chose to be represented by the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, CIO, hereinafter called the union.

Sometime after the election, the employees drew up a statement, dated March 21, 1947, which was signed by 19 of the 20 employees then with respondent, including the bargaining committee selected under the union organization. The statement is as follows:

"To whom it may concern:—

"We the undersigned, want to sever our relations with the union (UAW-CIO) representing us at Vulcan Forging Company; 3900 Wyoming, Dearborn, Mich. We are doing so without any intimidation or influence in any way."

Other than the date of the instrument, it does not appear when the names were signed to this notice.

Subsequently, on March 24, 1947, a meeting was held between the representatives of the International Union, the representatives of management, and Swindell and Ramsey, constituting the bargaining committee of the employees, to consider the request of the union for the execution of a contract.

Apparently a week or so after the meeting, respondent received the written notice above set forth, stating that the employees had severed their relation with the union. On April 18, respondent informed the union by letter that it had not advised it earlier with regard to its views on the proposed contract because it had received the notice signed by its employees to the effect that they severed all relations with the union; and respondent, in its letter, asked the union, "Under the circumstances wouldn't it be wiser to defer consideration of the proposed contract which you submitted until such time as it may appear that the employees desired to have the union represent them?"

The repudiation of the union by the employees was not due to any unfair labor practice or unfair conduct by respondent; and there was no allegation or evidence of any unfair labor practice prior to the repudiation of the union by the employees.

The failure of the Board to allege or prove compliance of the union with Section 9(f), (g), and (h) of the Act is not a bar to enforcement of its order. National Labor Relations Board v. Wiltse, 6 Cir., 188 F.2d 917; National Labor Relations Board v. Greensboro Coca Cola Bottling Co., 4 Cir., 180 F.2d 840.

While there is no showing in the transcript of the record that the union failed to comply with Section 9(f), (g), and (h) of the Act, there was submitted by respondent, after arguments in this court, a photostatic copy of a statement dated subsequent to the arguments and purporting to be signed by the Affidavit Compliance Branch of the National Labor Relations Board, in which it is set forth that the Congress of Industrial Organizations, the parent union in this case, was not in compliance with the filing requirements of the above mentioned section of the Act on the date on which the complaint was issued by the Board; and such statement has not been questioned by the Board. According to Section 10(e) of the Act, Title 29 U.S.C.A. § 160(e), leave to adduce additional evidence in the

court of appeals may be ordered upon a showing, to the satisfaction of the court, that such additional evidence is material, and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency. No such showing has been made, or, perhaps, could be made in this case. In this connection, the Board submits that even were the complaint dismissed at this time on the ground of disability in the charging union at the time the complaint was issued, there would still remain outstanding the original charge upon which the Board could now issue an unassailable complaint, since the Congress of Industrial Organizations is at the present time in full compliance. There is, however, no need to consider these matters in arriving at a determination in this case inasmuch as the question was not raised before the Board and evidence of failure of compliance was never adduced under Section 10(e) of the Act. In view of these circumstances, and, moreover, because the case is determinable in respondent's favor on other grounds, we pass to the consideration of the additional contentions made by respondent, and to our determination resting upon the principal issue.

■ As to whether respondent's operations affected commerce within the meaning of the Act, it was stipulated that it buys its single raw material from, and sells its entire finished product to the Ford Motor Company in River Rouge, Michigan. The Board took official notice that the Ford Company carries on extensive activities with regard to its products in interstate commerce; and there seems no reasonable ground for considering that judicial notice could not be taken of this commonly known fact. An employer may be subject to the Act, although not himself engaged in interstate commerce. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014. See also National Labor Relations Board v. Van Deusen, 2 Cir., 138 F.2d 893. The controlling factor with respect to the Board's jurisdiction on this aspect of the case is whether the impact of a labor controversy would affect interstate commerce. National Labor Relations Board v. Niles Fire Brick Co., 6 Cir., 124 F.2d 366. Activities, intrastate in character when separately considered, fall within the ambit of control by Congress, if so closely and substantially related to interstate commerce that their control is essential or appropriate for its protection from burden or obstruction. National Labor Relations Board v. J. L. Hudson Co., 6 Cir., 135 F.2d 380. With respect to the claim that the volume of commerce that might be affected by the controversy in this case is not substantial, Congress did not make the operation of the Act depend upon any particular volume of commerce affected more than that to which the courts would apply the maxim *de minimis*. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014. See also Shore v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678. It is our conclusion that the operations of respondent affected interstate commerce, within the meaning of the Act.

■ With the disposition of these contentions, we come to the issue whether the employees had a right to sever their association with the union. The Board contends that, exceptional circumstances aside, certification of a union immunizes from challenge its status as exclusive bargaining representative of employees for a reasonable length of time, and that the loss of majority support by the union within this period by an unsolicited shift in employee sentiment does not relieve the employer of its duty to bargain with the certified union.

We can not see how it can reasonably be said in this case that the employees are bound to be represented by the discredited union. The revocations were valid, and, hence, the Board did not sustain its burden of proving that respondent had refused to bargain with the union that represented the majority of the employees. National Labor Relations Board v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815. See National Labor Relations Board v. Standard Steel Spring Co., 6 Cir., 180 F.2d 942. While this court, in National Labor Relations Board v. Prudential Ins. Co., 6 Cir., 154 F.2d 385, recognized that a certification of a collective bargaining representative is gen-

erally entitled to a reasonable period of existence regardless of the fact that conditions may have materially changed immediately after certification, that case did not involve the issue here before us, as it was concerned with the determination of the Board as to what an appropriate bargaining unit was and not with the question of a union that had been repudiated by all of the employees. They are entitled by law to bargain collectively through a representative of their own choosing. To force them to bargain through a representative which they had repudiated would be depriving them of their right to bargain through the representative of their choice.

The record is devoid of any substantial evidence, or any evidence whatever, that respondent refused to bargain collectively with the representative of the employees, or was guilty of any unfair labor practices.

In accordance with the foregoing, the petition for enforcement of the order of the Board is denied.