NATIONAL LABOR RELATIONS BOARD
v. ALDORA MILLS.

No. 12900.

United States Court of Appeals
Fifth Circuit.

June 6, 1952.

A. Norman Somers, Winthrop A. Johns, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, Fannie M. Boyls, Julius G. Serot, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

John Wesley Weekes, Murphey Candler, Jr., Decatur, Ga., for respondent.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

**HUTCHESON, Chief Judge.**

This is a proceeding to adjudge respondent, Aldora Mills, in contempt of our order entered in the above styled and numbered cause. It comes up on the motion of the National Labor Relations Board, which, alleging that the respondent has refused and refuses, upon the request of Textile Workers Union of America C. I. O., to bargain with it as ordered by our decree, sought a show cause order, a contempt adjudication, and an order requiring respondent to purge itself of contempt by bargaining with the Union upon request.

A rule *nisi* having issued, respondent answered. Fully denying the charges made against it and particularly that it was, or had been, in contempt of the decree, it alleged that, until it became impossible to do so, it had fairly and fully complied with all the provisions of the decree, including bargaining with the union.[1] It then went on to allege: that it had been advised by its employees that the union did not represent them; that they did not want to be represented by it; and that the company should not recognize the union as bargaining agent for it.[2] On the basis of these facts, re-

---

1. In support of the allegation, it set out the following communication received from the Board:
    "Gentlemen:
    "The Regional Director of the National Labor Relations Board having advised the Board that Respondent is in compliance with the Board Order and Court Decree in the above entitled matter, the case is hereby closed.
    "Very truly yours,
    "(S.)  Frank M. Kleiler,
            "Executive Secretary."

2. In more detail it alleged: that on Dec. 26, 1950, it had received from the Regional Director N. L. R. B. a communication with the petition attached advising it that a petition for decertification of the Union had been received by him signed by 273 employees of respondent [constituting 78% of the employees in the unit] in the bargaining unit; that at or about this time respondent had been advised that a majority of respondent's employees did not want the union to represent them and that if it continued to do so, there would be trouble in the plant.
    The response contained the further al-

legations: that on Jan. 9, 1951 the union had asked for a bargaining conference and respondent had advised it of the objection by its employees to it as bargaining agent. At the same time it had reminded the union that since the certification of the union in 1946 it had, on numerous occasions, requested the union and the Board to hold an election to clear up the controversy and this request had consistently been refused; and that the respondent at that time was of the opinion that the union understood, and in effect, agreed with it that it was in no situation to continue to bargain with the union as bargaining agent until the representation question was cleared up.
    Respondent further alleged: that since the certification of the union by the Board in 1946, now six years ago, and since the hearing before the trial examiner the bargaining unit has changed materially in personnel; that at the time of the certification there were 498 of whom only 180 are now employed by respondent; that the employees in the unit, as of Feb., 1952, are 418; that since the petition to adjudge respondent in contempt was filed a third decertification pe-

spondent insists that it was not only entitled, but obligated to, cease bargaining with the certified union, and that its actions were not, and could not be, adjudged to be taken in contempt.

Petitioner in its reply ignores or treats as immaterial respondent's allegation that the union no longer represents, and for a long time has not represented, the employees as their chosen bargaining agent and seems to believe that the union, because certified in 1946, continues indefinitely to represent the employees, no matter that all or a great majority of the employees do not want it to do so.

In their briefs, Board and respondent divide on the same lines. The Board insists that respondent negotiate with the union as bargaining agent even though it is not the choice of the employees. The respondent insists that under the plain terms of the act it is the right of the employees to choose their own bargaining agent and it is an unfair labor practice for the employer and the union to deny them that right. In pressing its position, the Board seems to overlook the fact that what is afoot here is not a proceeding before the Board for the adjudication by it of a complaint of unfair labor practices filed by it in aid of a union seeking to obtain bargaining privileges, but is a proceeding before a court to have the court adjudge respondent in wilful contempt of its decree.

■ We are in complete agreement with what was said by the Court of Appeals of the Fourth Circuit in N. L. R. B. v. Norfolk Shipbuilding & Drydock Corp., 195 F. 2d 632, that "the process of the court in contempt proceedings should not be used as an adjunct of collective bargaining but should issue only where there was probable

tition has been presented to respondent containing the names of 86 percent of the employees in the bargaining unit, but the factory manager advised the employes that with the contempt proceeding pending, it would accomplish nothing to file the petition.

cause to believe that the parties have in fact been guilty of real contempt of court."

■ Our examination of the record made in this proceeding in the light of the briefs of the parties, of the Labor Management Act, particularly Sec. 9 of that act, as amended Oct. 22, 1951, 29 U.S.C.A. § 159 (e) (1, 2), and of the controlling decisions,[3] leaves us in no doubt that the respondent, in declining to continue bargaining with the union as ordered by our decree, acted in the utmost good faith and in the sound belief engendered by the decertification petitions and the notices and information it had received from its employees that it was proper under the act and our decree for it to do so.

In view of the facts shown in respondent's answer and not denied by the Board, that the certification was made in 1946, nearly six years ago, and that the present employees do not want the union to represent them, and of the Board's persistence in refusing to take any steps by either decertification proceedings or otherwise to give the present employees an opportunity to select their own representative, we are in no doubt that no probable cause has been shown for the belief that respondent has contumaciously refused to bargain in good faith or that a further inquiry into the charge of contempt would be justified.

As to our case of N. L. R. B. v. Sanson Hosiery Mills, 5 Cir., 195 F.2d 350, on which the Board relies, it is sufficient to say that it was an enforcement, not a contempt proceeding, and that what was said and held there was intended to apply, and did apply, only to the facts of the proceeding for enforcement then under review.

The petition of the Board to adjudicate respondent in contempt is denied, and the proceeding is dismissed.

3.  N. L. R. B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927; N. L. R. B. v. Norfolk Shipbuilding Corp., 4 Cir., 195 F.2d 632, and N. L. R. B. v. Red Arrow Freight Lines, 193 F.2d 979; N. L. R. B. v. Bradley Wash Fountain Co., 7 Cir., 192 F.2d 144, at page 155.