NATIONAL LABOR RELATIONS BOARD et al.

v.

NATIONAL SHIRT SHOPS OF FLORIDA, Inc.

No. 14791.

United States Court of Appeals Fifth Circuit.

May 6, 1954.

Fannie M. Boyls, Atty., N.L.R.B., A. Norman Somers, Asst. Gen. Counsel, N. L.R.B., David P. Findling, Assoc. Gen. Counsel, N.L.R.B., George J. Bott, General Counsel, Robert H. Hurt, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Martin L. Conrad, New York, N. Y., Joseph A. Perkins and Jeptha P. Marchant, Miami, Fla., Harry Schneider, New York, N. Y., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Upon findings of the Board, made on the record alone without the benefit of findings by the examiner, that the respondents were guilty of certain unfair labor practices, (a) refusing to bargain with Local No. 1666, Retail Clerks A. F. of L., and (b) refusing to reinstate certain named employees upon their request on March 20, 1952, and thereby discouraging membership in said local, the Board entered its order requiring respondent (1) to bargain with the union; (2) to cease discouraging membership in it; and (3) to make the named employees whole for any loss of pay they had suffered. This petition seeks enforcement of that order.

It may be well at the outset to point out that this is not the ordinary enforcement proceeding in which the evidence on the controlling issues is in conflict and the question for determination is whether the findings of examiner and board are supported by substantial evidence on the record considered as a whole. It is, on the contrary, a case in which there are no findings by the examiner and where on the issues for decision the evidence is without substantial conflict and the questions requiring answers are in substance questions of law.

This is not to say that, in addition to the controlling questions presented for our decision, the case, while it has been dragging its slow length along, has not presented a series of collateral issues which time and changing circumstances have made it unnecessary for us to restate. Indeed the contrary of this is true.

Beginning September 11, 1951, with a letter from the union claiming to represent a majority of respondents' employees, followed by: a representation proceeding; a decision and direction of election [1] in respect of a named unit; a certification on January 25, 1952 of the union as the exclusive representative of the employees in the unit; charges and amended charges; an original and an amended complaint of unfair labor practices filed by the General Counsel of the Board; there ensued a decision and the order we are here asked to enforce, in the course and in respect of which many questions have been mooted which it is not necessary for us to answer, and much straw has been threshed which it is unnecessary for us to rethresh.

One of such questions which will be mentioned but not decided by us, whether the respondent was entitled to show that the union was not in compliance, arises out of the fact that throughout these proceedings the respondents, vigorously insisting that the union was not in compliance, vainly endeavored before examiner and Board to offer proof and obtain a ruling that the union was not in compliance, only to be met with the uniform and unvarying ruling that this was a·question, not for hearing and proof, but for the administrative determination of the Board.

As we view the record, there are three, and only three, questions which it will be necessary to decide. One of these has to do with the refusal to reinstate and the order requiring reinstatement; while two of them are concerned with the finding and order respecting bargaining. It is with these two that we shall deal first.

The first· of these is: assuming that the Board correctly determined that respondents had no right to inquire into whether the union was in compliance and therefore had to accept the Board's certification of it as bargaining agent, did the Board correctly determine, that the respondents, within the meaning of the act, refused to bargain, and that the strike of the employees called on February 11, to take place on February 13, was, as found by the Board, an unfair labor practice strike, rather than an eco-

nomic strike as claimed by the respondents.

The second is: assuming that the Board's determination was correct in both particulars, whether the Board could lawfully require the respondents to recognize and deal with the union as representative, when the undisputed evidence establishes: (1) that the union lost all its members and ceased to exist as such on and after April 10, 1952, more than a year before the Board made its order; and (2) that every employee of respondents who had revoked his membership in the union more than a year before, had filed with the Board, before its decision in this case and more than a year after the union had been certified and had ceased to exist, a petition for decertification, and the Board had refused to receive and act upon it.

For the reasons hereafter briefly stated, we answer both questions in the negative. Upon the first question, the whole of the record, including the undisputed evidence of Levine, shows: (1) that, while the respondents did state that their counsel was looking into the question of whether the union was in compliance, there was in law and in fact no refusal to bargain; and (2) that the strike was called as a means of forcing action on Levine's demand, made as a condition to his sitting down to bargain, that one Elmo Vilardebo, who had been discharged by respondent on October 6, as respondent claimed for insubordination and Levine claimed as an unfair labor practice, be reinstated.

An examination of the record leaves us in no doubt: that from the time of Vilardebo's discharge until Levine's dismissal from the union, Elmo's reinstatement had been of first importance with Levine, as business agent of the union; that he had made it the *sine qua non* of sitting down with respondents for bargaining; and that he regarded respondents' refusal to reinstate Elmo as a refusal to bargain and a ground for striking.

The respondents, on their part, have been equally adamant about reinstating Elmo, and have in their turn regarded Levine's insistence upon his reinstatement as an arbitrary refusal to bargain and a barrier to bargaining. It was, we think clear, therefore, their failure to submit to Levine's unwarranted and arbitrary demand, that they first reinstate Elmo, and not any refusal on their part to bargain, which was the cause and reason for the strike.

Upon the second question, the record shows without dispute that when "for reasons unrelated to the issues in this case, Levine was dismissed from his position as business agent", all of its members resigned from the local which had been certified as representative, and they have not been members since. It shows, too, that sixty days before the Board made its order, whose enforcement it seeks here, it was fully advised by the evidence in the case and by a decertification petition signed by all of the employees: that the union was not in existence as a local with members, and for more than a year had not been; and that it did not represent, and for more than a year had not represented, any of the employees. Finally, it shows that the Board, though it was fully advised of the facts and knew that its order would defeat the real desires and prejudice the interests of the employees, it was supposed to be in aid of, nevertheless ordered the respondent to bargain with a sort of rotten borough union which had no existence except in the name of one Hall, a regional organizer for the International, as trustee.

Whatever may be said as to the state of the law, as set out in, and the correctness *vel non* of, the cases relied on respectively by respondents and Board, where the employees request a decertification of the union and the union, as a union, continues to exist, this case stands on its own particular facts. Viewing the case in their light, we are in no doubt that the order, requiring the employer to recognize this rump union as the representative of its employees, and thus making the wishes of the International union and Hall, as trustee, over-

ride the wishes of the employees, was improvidently entered, and that we should not order its enforcement.

Under the facts of this case, the error in the assumption by the Board, that it is clothed with power to arbitrarily override the expressed wishes of the employees, is so egregious, its action so inconsiderate of their rights, that no cases need be cited in support of our position. If citation of cases be needed, however, the cases following, decided by this and other courts, will be found to fully support our action. Mid-Continent Petroleum Corp. v. N.L.R.B., 6 Cir., 204 F.2d 613, certiorari denied 346 U.S. 856, 74 S.Ct. 71; N.L.R.B. v. Mayer, 5 Cir., 196 F.2d 286; N.L.R.B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927; N.L.R.B. v. Aldora Mills, 5 Cir., 197 F.2d 265; N.L.R.B. v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815; N.L.R.B. v. Standard Steel Spring Co., 6 Cir., 180 F.2d 942; N.L.R.B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627. See also N.L.R.B. v. Poultry Enterprises, 5 Cir., 207 F.2d 522; N.L.R.B. v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144; N.L.R.B. v. Red Arrow Freight Lines, 5 Cir., 193 F.2d 979.

■■ The matter stands differently, however, as to paragraph 2(b) of the order of the Board requiring respondent to make whole the employees, named in the appendix to the order, for any loss of pay they may have suffered by reason of respondents' failure to reinstate them on request. For, though we think it clear that the strike was not an unfair Labor practice strike but an economic one, we agree with the Board, that the letter requesting reinstatement was an unequivocal offer to return. We agree with it also that they were entitled to reinstatement for it is not contended, and the record does not show, that any complainant was replaced. Indeed they were all offered or granted reinstatement between April 15th and June 2nd.

Enforcement of paragraphs 1(a) and (c) and 2(a), the provisions of the order requiring respondents to bargain with the disbanded local, is denied. Enforcement of its make whole provisions, paragraphs 1(b) and 2(b) is granted. Let a decree drawn in accordance herewith be presented for entry.